UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BITTERROOT HOLDINGS, LLC, | § | Cv. No. 5:14-CV-862-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MTGLQ INVESTORS, L.P. and | § | |
| BARRETT, FRAPPIER, TURNER & | § | |
| ENGEL, L.L.P., | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING MOTION TO REMAND AND DENYING MOTION FOR
LEAVE TO AMEND COMPLAINT

Before the Court are a Motion to Remand (Dkt. # 4) and a Motion for Leave to Amend Complaint (Dkt. # 3) filed by Plaintiff Bitterroot Holdings, LLC ("Plaintiff"). The Court held a hearing on the Motions on January 21, 2015. At the hearing, Brian J. Trenz, Esq., represented Plaintiff; Jeremy J. Overby, Esq., represented Defendant MTGLP Investors, L.P. ("MTGLP"); and Mark D. Hopkins, Esq., represented Defendant Barrett, Frappier, Turner & Engel, L.L.P. ("Barrett"). Upon careful consideration of the arguments asserted at the hearing and in the supporting and opposing memoranda, the Court **DENIES** Plaintiff's Motion to Remand and **DENIES** Plaintiff's Motion for Leave to Amend Complaint.

## BACKGROUND

On November 12, 2005, John Harvey ("Harvey") executed a Texas Home Equity Note ("Note") in the amount of $94,320 payable to American Equity Mortgage, Inc. ("AME"). ("Handville Aff.," Dkt. # 10-1, Ex. A ¶ 6.) At the same time, Harvey executed a Texas Home Equity Security Instrument ("Deed of Trust") granting a security interest in the property located at 534 Cliff Creek, San Antonio, Texas 78251 to AME. (Id. ¶¶ 3, 6.) Mortgage Electronic Registration Systems, Inc., as Nominee for AME, subsequently assigned the Note and the Deed of Trust to Citimortgage, Inc. ("Citimortgage"). (Id. ¶ 7; Ex. A-3, Dkt. # 10-1 at 42.)

On November 3, 2008, Citimortgage sent Harvey a Notice of Default stating that Harvey was in default and that the loan would be accelerated if he did not pay the past due amount. (Ex. A-6, Dkt. # 10-1 at 48.) On February 20, 2009, Citimortgage sent Harvey a Notice of Acceleration stating that Citimortgage had elected to accelerate the maturity of the debt. (Ex. A-7, Dkt. # 10-1 at 51.) After Harvey failed to cure, Citimortgage filed an Application for Home Equity Foreclosure Order in the 131st Judicial District Court of Bexar County, Texas on April 22, 2009. (Ex. A-8, Dkt. # 10-1 at 52.) On November 3, 2009, Citimortgage filed a motion to dismiss the application without prejudice, and the application was later dismissed. (Ex. A-9, Dkt. # 10-1 at 93; Handville Aff. ¶ 11.) Citimortgage

filed a second Application for Home Equity Foreclosure Order in the 150th

Judicial District Court of Bexar County, Texas on August 26, 2010.  (Ex. A-10,

Dkt. # 10-1.)  That application was dismissed without prejudice on March 31,

2011.  (Ex. A-11, Dkt. # 10-1.)

On November 4, 2010, Citimortgage assigned the note and security

interest to Defendant MTGLQ.  (Ex. A-4, Dkt. #10-1 at 44; Handville Aff. ¶ 8.)  In

2011, in a proceeding unrelated to the outstanding loan held by MTGLQ, the

property was sold at auction to DTND Sierra Investments, LLC ("DTND") at a

Homeowner's Association foreclosure sale due to Harvey's failure to pay the

homeowner's association assessments and dues.  ("Am. Pet.," Dkt. # 1-5 ¶ 12.)

Plaintiff was ultimately assigned the interest purchased by DTND.  (Id.)

On June 28, 2012, Defendant Barrett, acting as counsel for MTGLQ,

sent Harvey a new Notice of Default and opportunity to cure by paying the past

due balance.  (Ex. A-12, Dkt. # 10-1 at 147–48.)  On August 1, 2012, Barrett, on

behalf of MTGLQ, sent a Notice of Acceleration stating that MTGLQ had elected

to accelerate the maturity of the debt.  (Ex. A-13, Dkt. # 10-1 at 154.)  MTGLQ

filed an Application for Home Equity Foreclosure in the 166th Judicial District

Court of Bexar County, Texas on June 24, 2013.  (Ex. A-14, Dkt. # 10-1 at 157.)

That court issued an order on November 8, 2013, allowing MTGLQ to proceed

with a foreclosure sale under the terms of the Deed of Trust.  (Ex. A-15, Dkt. # 10-1 at 222.)

Plaintiff filed an Original Petition in the 73rd Judicial District Court of Bexar County, Texas on August 1, 2014.  (Dkt. # 1–3.)  Plaintiff filed an Amended Petition adding claims against Barrett on September 4, 2014.  (Am. Pet., Dkt. # 1-5.)  Plaintiff alleges that the foreclosure proceedings initiated by MTGLQ are barred by the statute of limitations and that its interest in the property is thus no longer enforceable.  (Id. ¶ 14.)  Plaintiff further alleges that Barrett committed fraud and violated the Texas Debt Collection Practices Act ("TDCPA") by misrepresenting the date of acceleration in MTGLQ's foreclosure proceedings in state court.  (Id. ¶¶ 18, 23–24.)  Plaintiff seeks a declaration that Plaintiff is the owner of the property, a declaration that MTGLQ is barred from foreclosing on the property by the statute of limitations, damages, and attorney's fees.  (Id. ¶¶ 21–22, 27–28.)  Plaintiff's Amended Petition also seeks a Temporary Restraining Order prohibiting Defendants from foreclosing on the property. [1]  (Id. ¶ 33.)

MTGLQ filed a Notice of Removal on October 2, 2014, invoking this court's diversity jurisdiction.  (Dkt. # 1.)  On November 3, 2014, Plaintiff filed a Motion to Remand (Dkt. # 4) and a Motion for Leave to File Amended Complaint

---

[1] Plaintiff has not separately moved for a Temporary Restraining Order in this Court, and the memoranda on the instant Motions do not argue the issue.  It is unclear whether the foreclosure sale, originally scheduled for August 5, 2014, (Am. Pet. ¶ 13), has occurred.

(Dkt. # 3).  MTGLQ filed a Response to Plaintiff's Motion to Remand (Dkt. # 7) and a Response to Plaintiff's Motion for Leave to File Amended Complaint (Dkt. # 8) on November 11, 2014.  Barrett filed a Response in Opposition to Plaintiff's Motion to Remand (Dkt. # 9) and a Response to Plaintiff's Motion for Leave to Amend the same day (Dkt. # 8), and filed an Amended Response to Plaintiff's Motion to Remand on November 13, 2014 (Dkt. # 12).  Plaintiff subsequently filed replies to both Motions.  (Dkt. ## 13, 16.)

<u>LEGAL STANDARDS</u>

A.    <u>Motion to Remand</u>

A defendant may remove to federal court any civil action brought in state court over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a); <u>Mumfrey v. CVS Pharmacy, Inc.</u>, 719 F.3d 392, 397 (5th Cir. 2013).  Original jurisdiction may be based on either diversity of citizenship or the existence of a federal question.  <u>Halmekangas v. State Farm Fire & Cas. Co.</u>, 603 F.3d 290, 295 (5th Cir. 2010).  On a motion to remand, the removing party bears the burden of establishing that one of these bases of jurisdiction exists.  <u>Shearer v. Sw. Serv. Life Ins. Co.</u>, 516 F.3d 276, 278 (5th Cir. 2008).  Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties—in other words, every plaintiff must be diverse from every defendant.  28 U.S.C. § 1332(a); <u>Harvey v. Grey Wolf</u>

5

Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008); Caterpillar Inc. v. Lewis, 519

U.S. 61, 68 (1996).

       To determine whether jurisdiction is present, the court considers the

claims in the state court petition as they existed at the time of removal.  Louisiana

v. Am. Nat'l Prop. Cas. Co., 746 F.3d 633, 637 (5th Cir. 2014) (citing Cavallini v.

State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995)).  Because

removal jurisdiction implicates federalism concerns, all ambiguities must be

construed in favor of remand.  Barker v. Hercules Offshore, Inc., 713 F.3d 208,

212 (5th Cir. 2013) (citing Manguno v. Prudential Prop. & Cas. Co., 276 F.3d 720,

723 (5th Cir. 2002)).

B.   Leave to Amend Complaint

       A party may amend its pleading once as a matter of course within 21

days after serving it, or if the pleading is one to which a responsive pleading is

required, 21 days after service of a responsive pleading or 21 days after service of

a motion under Federal Rule of Civil Procedure 12(b), (e), or (f), whichever is

earlier.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its

pleading only with the opposing party's written consent or the court's leave.  The

court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

       Rule 15(a) evinces a bias in favor of granting leave to amend, Price v.

Pinnacle Brands, Inc., 138 F.3d 602, 608 (5th Cir. 1998), and a district court "must

possess a substantial reason to deny a request for leave to amend," Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004) (internal quotation marks omitted).  In determining whether to grant a party leave to amend a complaint, courts consider 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment.  Smith, 393 F.3d at 595.  The determination of whether to grant leave to amend is committed to the sound discretion of the district court.  Id.

An amendment is futile if it could not survive a motion to dismiss. Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## DISCUSSION

A.    Motion to Remand

Plaintiff argues that its claims against Defendant Barrett defeat the Court's diversity jurisdiction because Plaintiff and Barrett are both citizens of Texas.  (Dkt. # 4 ¶ 2–3; Am. Pet. ¶ 1–3.)  Defendants respond that Barrett was improperly joined and that the Court should therefore disregard Barrett's

citizenship in determining diversity jurisdiction under 21 U.S.C. § 1332(a).  (Dkt. # 7 ¶ 4; Dkt. # 12 ¶ 4.)

"The Federal courts should not sanction devices intended to prevent the removal to a Federal court where one has that right."  Smallwood v. Ill. Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting 14 Charles Alan Wright et al., Federal Practice and Procedure § 3641 (3d ed. 1998)).  If the court finds that a defendant has been improperly joined, the court may disregard that defendant's citizenship for purposes of determining diversity jurisdiction.  Borden v. Allstate Ins. Co., 589 F.3d 168, 171 (5th Cir. 2009).  A showing of fraudulent joinder can arise in one of two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  Smallwood, 385 F.3d at 573.  As there are no allegations of actual fraud in this case, only the second method of establishing fraudulent joinder is at issue.

To succeed under the second method, the defendant must demonstrate that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  Id.  To make such a determination, courts apply a Rule 12(b)(6)-type analysis, looking to the allegations in the complaint to determine whether there is a

reasonable basis to predict whether the plaintiff might be able to recover against the in-state defendant under state law.  Id.  Unlike in a traditional Rule 12(b)(6) analysis, however, courts retain discretion to pierce the pleadings and examine evidence to identify the presence of discrete and undisputed facts that would preclude recovery against the in-state defendant.  Id.; Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 311 (5th Cir. 2002).  Any contested issues of fact and ambiguities of state law must be resolved in favor of the plaintiff.  McKee v. Kan. City S. Ry. Co., 358 F.3d 329, 334 (5th Cir. 2004).

Defendants argue that Barrett was improperly joined because there is no possibility that Plaintiff can recover on its claims against Barrett.  Specifically, Defendants argue that 1) Barrett is protected from suit by qualified immunity; 2) Plaintiff has failed to submit sufficient factual allegations to maintain its claim against Barrett for fraud; and 3) Plaintiff's claims under the TDCPA must fail because Barrett is not a debt collector, foreclosure is not "debt collection" covered by the statute, and Plaintiff was not a party to the complained of foreclosure action.

1. Qualified Immunity

The public has an interest in loyal, faithful, and aggressive representation by the legal profession.  Bradt v. West, 892 S.W.2d 56, 71 (Tex. App. 1994).  To promote zealous representation, Texas courts have held that an attorney has qualified immunity from civil liability with respect to nonclients for

actions taken in connection with representing a client.  Id. at 72; Alpert v. Crain, Caton & James, P.C., 178 S.W.3d 398, 405 (Tex. App. 2005).  As a result, an attorney may assert his client's rights without fear of personal liability to the opposing party.  Miller v. Stonehenge/Fasa-Texas, JDC, L.P., 993 F. Supp. 461, 464 (N.D. Tex. 1998) (citing Bradt, 892 S.W.2d at 72).

An attorney cannot be held liable to a third party for conduct that requires "the office, professional training, skill, and authority of an attorney." Taco Bell Corp. v. Cracken, 939 F. Supp. 528, 532 (N.D. Tex. 1996) (citing Martin v. Trevino, 578 S.W.2d 763, 771 (Tex. Civ. App. 1978)).  The determination of immunity "focuses on the kind of conduct engaged in, not on whether the conduct was meritorious in the context of the underlying lawsuit."  Bradt, 892 S.W.2d at 72.  Qualified immunity thus applies "even if conduct is wrongful in the context of the underlying lawsuit."  Alpert, 178 S.W.3d at 406 (citing Renfroe v. Jones & Assocs., 947 S.W.2d 285, 288 (Tex. App. 1997)).

Under Texas law, legal counsel for a mortgage servicer with authority to service a mortgage may deliver notices of default and foreclosure proceedings in the course of its legal representation of the servicer.  Givens v. Midland Mortg. Co., 393 S.W.3d 876, 880 (Tex. Ct. App. 2012).  Texas courts and district courts interpreting Texas law have held that an attorney representing a client in foreclosure proceedings is entitled to qualified immunity.  See id. (citing Texas

case law on attorney immunity in reference to Barrett's actions taken in its representation of a mortgage servicer); Campbell v. Mortg. Elec. Registration Sys., Inc., No. 03-11-429-CV, 2012 WL 1839357, at *6 (Tex. App. May 18, 2012) (holding that the attorney defendants were immune from suit where the defendants had no contact with the plaintiffs outside of their capacity as legal counsel retained to assist in foreclosure proceedings); Tapia v. CitiMortgage, Inc., No. A-12-CA-1015-SS, 2013 U.S. Dist. LEXIS 126981, at *11–12 (W.D. Tex. Jan. 2, 2013) (holding that Barrett was immune from plaintiff's claims because it was acting as an attorney for CitiMortgage in pursuing foreclosure proceedings on its behalf).

        A lawyer's protection from liability arising out of the representation of a client is not without limits.  See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 793 (Tex. 1999).  Where a lawyer acting for his client participates in fraudulent activities, his action is "foreign to the duties of an attorney."  Poole v. Hous. & T.C. Ry., 58 Tex. 134, 137 (1882).  A cause of action may exist against an attorney who knowingly commits a fraudulent act outside the scope of his legal representation of the client.  Alpert, 178 S.W.3d at 406.  An attorney cannot avoid liability on the ground that he was acting as an agent for his client if he knowingly commits a fraudulent act that injures a third person.  Toles v. Toles, 113 S.W.3d 899, 911 (Tex. App. 2003); Likover v. Sunflower Terrace II, Ltd., 696 S.W.2d 468, 472 (Tex. App. 1985).

Here, the conduct alleged in Plaintiff's Amended Petition was undertaken by Barrett as counsel for Defendant MTGLQ in proceedings to foreclose on Harvey's property.  (See Ex. A-12, Dkt. # 10-1 at 147; Ex. A-13, Dkt. # 10-1 at 154.)  Barrett is therefore entitled to qualified immunity absent a showing that Barrett knowingly committed a fraudulent act that injured a third person. Here, Plaintiff's claim of fraud is based on the allegation that Barrett pursued foreclosure proceedings on behalf of MTGLQ knowing that the claim was barred by the statute of limitations and issued the 2012 Notice of Acceleration in order to mislead Plaintiff and the state court and avoid the limitations bar.  (Am. Pet. ¶¶ 18, 23–24.)

Under Texas law, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues.  Tex. Civ. Prac. & Rem. Code § 16.035(b).  When the four-year period expires, the lien and the power of sale become void.  Tex. Civ. Prac. & Rem. Code § 16.035(d); Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 567 (Tex. 2001).  If a note or deed of trust secured by real property contains an optional acceleration clause, the action accrues only when the holder actually exercises its option to accelerate.  Wolf, 44 S.W.3d at 566.  Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. See Shumway v. Horizon Credit Corp.,

801 S.W.2d 890, 892 (Tex. 1991).  Both notices must be "clear and unequivocal."
Id. at 893.

Even when a noteholder has accelerated a note upon default, the
holder can abandon acceleration if the holder continues to accept payments without
exacting any remedies available to it upon declared maturity.  Id. at 566–67.
Acceleration can also be abandoned by agreement of the parties.  Khan v. GBAK
Props., Inc., 371 S.W.3d 347, 356 (Tex. App. 2012) (citing San Antonio Real
Estate, Bldg. & Loan Ass'n v. Stewart, 61 S.W. 386, 388 (Tex. 1901)).
Additionally, where a debtor makes no objection, a creditor can abandon or rescind
its acceleration by voluntarily dismissing its claims against the debtor.  Denbina v.
City of Hurst, 516 S.W.2d 460, 463 (Tex. Civ. App. 1974) (holding that "where the
payor makes no objection to the recall of the option, we see no reason why the
[payee] could not revoke the same as well as not to have exercised it in the
beginning"); DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Trust Co., N.A., 958
F. Supp. 2d 738, 749–750 (W.D. Tex. 2013) (holding that unilateral notices of
rescission were sufficient to abandon acceleration); In re Rosas, 520 B.R. 534, 540
(W.D. Tex. 2014) ("The parties can establish abandonment through an agreement
or their actions alone, including unilateral actions in certain circumstances." (citing
Khan, 371 S.W.3d at 353)); cf. Callan v. Deutsche Bank Trust Co. Americas, 11 F.
Supp. 3d 761, 769 (S.D. Tex. 2014) (finding "no support for the proposition that a

13

noteholder may unilaterally rescind an option to accelerate where a debtor has

acted in reliance on the fact of the acceleration" (emphasis added)).

Here, the prior Notices of Acceleration issued by Citimortgage,

MTGLQ's predecessor in interest, were abandoned when Citimortgage dismissed

its claims without prejudice in state court.  The 2012 Notice of Acceleration sent

by Barrett was thus a valid action to give notice of acceleration of the outstanding

debt held by MTGLQ, and therefore cannot be the basis of a claim for fraud.[2]

Because Barrett was acting as counsel for MTGLQ in the foreclosure proceeding,

it is entitled to qualified immunity for its conduct arising out of that representation,

and the Court therefore finds no reasonable basis to predict that Plaintiff may be

able to recover from Barrett in state court.

2.    Texas Debt Collection Practices Act

Plaintiff's claim against Barrett for violation of the TDCPA is also

barred by qualified immunity.  Even if this claim were not so barred, it would

nevertheless fail.  Under the TDCPA, "a debt collector may not use a fraudulent,

deceptive, or misleading representation" by "misrepresenting the character, extent,

or amount of a consumer debt, or misrepresenting the consumer debt's status in a

judicial or governmental proceeding."  Tex. Fin. Code § 392.304(a)(8).  "Debt

---

[2] Because the conduct upon which Plaintiff bases its fraud claim was lawful, the
Court will not address Defendants' further argument that Plaintiff failed to plead
sufficient factual allegations to support its claim for fraud.

collector" is defined to mean "a person who directly or indirectly engages in debt collection," id. § 392.001(6), and includes third-party debt collectors as well as mortgage servicers and assignees, Davis v. Wells Fargo Bank, N.A., 976 F. Supp. 870, 885 (S.D. Tex. 2013) (citing Miller v. BAC Home Loans Servicing, L.P., 726 F.3d 717, 722 (5th Cir. 2013)).

The remedies afforded by the TDCPA are not limited to the actual parties to a consumer transaction, and "[a]ny person against whom the prohibited acts are committed may maintain an action for actual damages sustained as a result of those violations." Cushman v. GC Servs., LP, 657 F. Supp. 2d 834, 841 (S.D. Tex. 2009) (citing Campbell v. Beneficial Fin. Co. of Dall., 616 S.W.3d 373, 375 (Tex. App. 1981) (allowing a nondebtor plaintiff to bring suit for harassing phone calls because the alleged abuses were committed directly against her)); see also Brush v. Wells Fargo Bank, N.A., 911 F. Supp. 2d 445, 472 (S.D. Tex. 2012); Porterfield v. JP Morgan Chase, N.A., No. SA-12-CV-815-DAE, 2014 WL 3581183, at *21–22 (W.D. Tex. 2014).

Here, Plaintiff's claim fails because the complained-of conduct was not fraudulent or misleading. As discussed above, the 2012 Notice of Acceleration sent by Defendant Barrett was a valid action to pursue foreclosure proceedings following the prior abandonment of acceleration by Defendant MTGLQ's predecessor in interest, Citigroup. Defendant Barrett therefore did not

15

misrepresent the date of acceleration to the state court or anyone else. Additionally, Plaintiff does not have standing to bring a claim against Defendant Barrett under the TDCPA because the conduct in question—sending the 2012 Notice of Acceleration and representing the acceleration date in state court—was directed to Harvey and the state court, not against Plaintiff.

Because Plaintiff's claims against Defendant Barrett for fraud and violations of the TDCPA fail as a matter of law, the Court finds no reasonable basis for predicting that Plaintiff will be able to recover against Barrett in state court. The Court therefore finds that Defendant Barrett was improperly joined, and will not consider Barrett's citizenship for the purpose of determining diversity jurisdiction. Because Plaintiff is diverse from Defendant MTGLQ and the amount in controversy exceeds $75,000 (Dkt. # 1 ¶¶ 7–9, 19–23), the Court finds that diversity jurisdiction exists and **DENIES** Plaintiff's Motion to Remand.

B.    Motion for Leave to Amend

Plaintiff's proposed Amended Complaint does not assert new parties or additional causes of action, but instead adds specificity to its allegations of fraud against Defendant Barrett. (Dkt. # 3 at 3–4.) The basis for Plaintiff's fraud claim against Defendant Barrett in its proposed Amended Complaint remains the same as in its Amended Petition analyzed above—that is, Plaintiff alleges that Defendant Barrett fraudulently sent the 2012 Notice of Acceleration and misrepresented the

actual date of acceleration to the state court in order to evade the four-year statute of limitations.  (Dkt. # 3-1 ¶¶ 17–20.)  As discussed above, the 2012 Notice of Acceleration was a lawful act to pursue foreclosure proceedings following the prior abandonment of acceleration by Defendant MTGLQ's predecessor in interest, and Plaintiff's claims against Defendant Barrett for fraud and for violations of the TDCPA fail as a matter of law.  Because the proposed amendment would not cure this deficiency, the Court finds that it would be futile and therefore **DENIES** Plaintiff's Motion for Leave to Amend.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand (Dkt. # 4) and **DENIES** Plaintiff's Motion for Leave to Amend Complaint (Dkt. # 3).

**IT IS SO ORDERED**.

**DATE**: San Antonio, Texas, January 27, 2015.

_____

David Alan Ezra
Senior United States District Judge